J-S59016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.D., MOTHER | : | |
| | : | |
| | : | No. 1216 EDA 2018 |

Appeal from the Order Entered March 20, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000923-2017,
CP-51-DP-0001252-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.D., MOTHER | : | |
| | : | |
| | : | No. 1217 EDA 2018 |

Appeal from the Order Entered March 20, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000927-2017,
CP-51-DP-0001253-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.D., MOTHER | : | |
| | : | |
| | : | No. 1218 EDA 2018 |

Appeal from the Order Entered March 20, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000928-2017,
CP-51-DP-0001254-2014

J-S59016-18

| IN THE INTEREST OF: G.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1219 EDA 2018 |

Appeal from the Order Entered March 20, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000929-2017,
CP-51-DP-0002605-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 19, 2018**

C.D. (Mother)[1] appeals from the trial court's order, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her rights to her four minor children, S.C. (born 5/2004), A.D. (born 5/2010), D.D. (born 2/2012), and G.D (born 4/2015) (collectively Children).[2]  After careful review, we reverse.

On September 21, 2017, DHS filed petitions to involuntarily terminate Mother's parental rights to Children.  On March 20, 2018, the trial court held a termination hearing;[3] at the time of the hearing, Children had been in

_____

[1] The trial court also involuntarily terminated the rights to Children's putative fathers.  They are not parties to this appeal.

[2] Our Court *sua sponte* consolidated these appeals (Nos. 1216, 1217, 1218, & 1219 EDA 2018) on May 22, 2018.  **See** Pa.R.A.P. 513.

[3] Children were represented by both legal counsel and guardians *ad litem*. **See In Re: T.S., E.S.**, 2018 Pa. LEXIS 4374, 2018 WL 4001825, at *10 (Pa.

placement for 30 months. Children were all in kinship care at maternal grandmother's home and thriving emotionally, socially, and academically.

Caseworker Lakesha Goodwin, an APM[4] caseworker for the family, testified at the termination hearing that Children came into placement following a 2012 report that Mother had tried to commit suicide by overdosing on pills. The report, which was substantiated, also alleged that Mother had been diagnosed with depression and had a history of abusing marijuana and Phencyclidine (PCP). Children were adjudicated dependent in 2014 and placed into maternal aunt's care; the Department of Human Services (DHS) discharged the case in February 2015. Children were reunified with Mother on February 24, 2015. In September 2015, DHS obtained an order for protective custody for Children following reports of one of the Children's Fathers being incoherent at a gas station with two of the children and that Mother was also using drugs and had been intoxicated at D.D.'s school.

On October 8, 2015, Children were adjudicated dependent and placed into foster care; legal custody of Children was transferred to DHS. DHS developed a case plan for Mother to improve her parenting capabilities, ensure

_____

filed Aug. 22, 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[4] APM stands for "Asociacion Puertorriquenos en Marcha." It is a non-profit family services organization that "helps families face life's challenges by offering a full spectrum of bilingual and culturally sensitive social services related to education, health, human services, and community and economic development." *See* http://apmphila.org/about (last visited 9/19/18).

stable housing, enhance her relationship with Children, and address her substance abuse and mental health issues. Mother was substantially compliant with her permanency plan from September 2016 until the permanency hearing in March 2017, at which time the court noted Mother was only moderately compliant. A March 10, 2017 clinical evaluation unit (CEU) progress report noted that Mother completed her substance abuse treatment, had tested negative in all of her urine drug screenings and recommended that the court congratulate Mother on completing treatment. CEU Progress Report, 3/10/17. The court's June 2017 permanency order indicates that Mother was not compliant with the permanency plan and had not visited with Children since January 2017; the court decreased Mother's visitation to biweekly, supervised visits at DHS.

Caseworker Goodwin testified that: S.C. does not want to visit Mother; had last seen Mother in December 2016; S.C. would not suffer irreparable harm if Mother's rights were terminated; and adoption was in S.C.'s best interest. Goodwin also testified that: A.D. had last visited with Mother in January 2017; A.D. does not ask about Mother; A.D. would not be irreparably harmed if Mother's rights were terminated; and adoption would be in A.D.'s best interest. Goodwin also testified that: D.D. last saw Mother in January 2018; D.D. does not ask about Mother; D.D. would not suffer irreparable harm if Mother's rights were terminated; and that adoption is in D.D.'s best interest. Finally, Caseworker Goodwin testified that G.D.: last visited with Mother in January 2018; does not appear to be attached to Mother during visits; has no

parent-child bond with her as he was placed into DHS care shortly after his birth; that he would not suffer irreparable harm if Mother's rights were terminated; and that adoption is in his best interest.[5]

Mother, who also testified at the termination hearing, noted that she completed both her alcohol and drug treatment plans, as well as her mental health treatment and parenting classes, in compliance with DHS' case plan. She testified that she visits Children "[a]s much as possible" and that she attended visits with Children every two weeks except for when she was incarcerated. N.T. Termination Hearing, 3/20/18, at 56. Finally, Mother testified that she called the caseworker "every day" in the past two months to arrange visits, but no one showed up at the visits.[6] *Id.* at 58-59.

_____

[5] Mother was arrested for driving under the influence (DUI- alcohol) in January 2017. At the time of the termination hearing, this DUI case was still pending in the trial court. *See* N.T. Termination Hearing, 3/20/18, at 58. *See also* First Judicial District of Pennsylvania Secure Court Summary, MC-51-CR-0002318-2017 (DUI: Gen. Imp/Inc of Driving Safely, 1st Off – awaiting appeal hearing).

[6] Notably, DHS confirmed that Mother almost daily contacted DHS to have bi-weekly visits with Children in February and March 2018 (*after* the filing of the petitions), however, foster parents were not cooperative in arranging those visits. *See* N.T. Termination Hearing, 3/20/18, at 49-50 ("For this month, mom has contacted me almost every day for a visit and I tried to contact the family the night the visit didn't happen."). The record is replete with references to a PFA order between Mother and maternal grandmother; Mother's counsel intimated that grandmother may have also affected Mother's ability to visit with Children prior to the filing of the termination petition. *Id.* at 66. However, the court noted that it considered Mother's visitation attempts, but also stated that "the [c]ourt has to take not only that window, but the [c]ourt has to take the whole perspective, the whole case, since the kids came [in]to care." *Id.* at 69.

Following the termination hearing, the court entered an order involuntarily terminating Mother's parental rights to Children, based on

sections 2511(a)(1), (2), (5), (8),[7] and (b)[8] of the Adoption Act.[9]  Mother filed

a timely notice of appeal and complied with the trial court's request to file a

_____

[7] Pursuant to section 2511(a), the rights of a parent may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. §§ 2511(a) (1), (2), (5) & (8).

[8] The court ultimately stated "there would be no irreparable harm done to the [C]hildren . . . since there is no maternal bond between [M]other and [C]hildren [and] there is no positive beneficial relationship that should be preserved."  N.T. Termination Hearing, 3/20/18, at 70.

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On

appeal, Mother presents the following issues for our consideration:

> (1)    Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties.
>
> (2)    Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties.
>
> (3)    Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by Department of Human Services to provide [M]other with additional services and that the conditions that led to placement of the children continue to exit.
>
> (4)    Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of the children continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan.
>
> (5)    Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [C]hildren and that termination would serve the best interest of the [C]hildren.

Mother's Brief, at 7.

---

[9] 23 Pa.C.S. §§ 2101-2910.

It is well established that:

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set as forth in 23 Pa.C.S. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

To the extent that much of Mother's testimony directly contradicted Caseworker Goodwin's, the court deemed Mother not credible. Trial Court Opinion, 6/26/18, at 6, 8, 10, 13. While our Court recognizes that "the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact," we are

equally mindful that "[t]he burden of proof is on the party seeking termination to establish *by clear and convincing evidence* the existence of grounds for doing so." **In re D.A.T.**, 91 A.3d 197, 203 (Pa. Super. 2014) (citation omitted) (emphasis added). **See In re Adoption of S.P.**, 47 A.3d 817, 826-27 (Pa. 2012) (trial court's credibility and weight determinations will not be disturbed on appeal when they are *supported by competent evidence in record*) (emphasis added); **In re Adoption of T.B.B.**, 835 A.2d 387, 394 (Pa. Super. 2003) (if trial court's findings are supported by competent evidence, we must affirm court's decision, even if record could support opposite result).

Here, Caseworker Goodwin's contradicted testimony was not supported with credible, documentary evidence. **In re T.F.**, 847 A.2d 738, 742 (Pa. Super. 2004) (clear and convincing standard requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."). In fact, several times Goodwin recanted her statement regarding Mother's non-compliance with her permanency plan. The record reveals that Mother was substantially compliant from the beginning of her permanency plan in September 2016 until her permanency hearing in March 2017, when the court's permanency order states she has been "moderately compliant."

The record also contains conflicting documentary evidence. For example, a progress report dated October 19, 2017 indicates that Mother has not completed her PCE, while another progress report dated the same day notes that she completed her scheduled PCE and the Agency recommended

- 10 -

no further treatment. Moreover, several progress reports note that the CEU did not have further information on Mother's treatment progress or that the CEU was unable to retrieve further information on Mother's progress; Mother, however, provided documentation to show that she attended and completed her ordered treatment, was consistently employed, and has lived in a four-bedroom/2-bathroom house for more than nine years.[10] Finally, Caseworker Goodwin testified that S.C., the oldest of the Children, does not want to visit Mother. However, a letter from S.C., included as an exhibit in the record, states that she wants to continue to see Mother.

Mother testified that she was unable to visit Children when she was incarcerated; the record supports Mother's excuse for missing visits beginning in January 2017. A criminal court summary indicates that Mother had been arrested on January 25, 2017, and was awaiting an appeal hearing on DUI charges. At the termination hearing, Caseworker Goodwin speculated that Mother's DUI was a result of her being under the influence of PCP. **See** N.T. Termination Hearing, 3/20/18, at 24 ("Well, this was mom's drug of choice."). However, Mother testified she was stopped for being under the influence of alcohol. **Id.** at 62. Again, at the time of the termination hearing, Mother had not yet been tried on the DUI charge.

---

[10] Mother also testified that S.C.'s putative father, who was a drug addict and often incarcerated, no longer lives with her. N.T. Termination Hearing, 3/20/18, at 61.

- 11 -

In ***In re B., N.M.***, 856 A.2d 847 (Pa. Super. 2004), our Court recognized:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***Id***. at 855 (internal citation omitted).

Under a totality of the circumstances, we cannot conclude that termination is clearly warranted. Drug and alcohol use and mental health issues were DHS' primary concerns when it removed Children from Mother's care. ***See*** N.T. Termination Hearing, 3/20/18, at 21. Mother unequivocally completed her drug and alcohol treatment; other than being referred for a behavioral health specialist assessment in September 2017, there was no evidence of further mental health concerns regarding Mother. While Mother has a pending DUI charge, she has not yet been proven guilty of that offense. Moreover, only one out of over 20 urine screens spanning from January 2016 to August 2017 resulted in a positive screen.[11] DHS' claims that Mother frequently missed random drug/urine screens is belied by the record. She underwent urine screens in January 2016, February 2016, March 2016, April

---

[11] Mother's only positive urine/drug screen result was on September 14, 2016 for marijuana.

2016, July 2016, August 2016, September 2016, November 2016, December 2016, January 2017, February 2017, July 2017, and August 2017.[12]

We recognize that Children have been in care for almost 35 months to date and they are thriving in kinship care. We, however, cannot overlook the fact that Mother has made significant efforts in completing her permanency plan in order to overcome her drug and alcohol dependency issues and reunify with Children. A single caseworker testifying to what she believed to be best for Children (and which often contradicted Mother's own testimony and at times was contradicted by record evidence), without documentation to support her argument to terminate Mother's parental rights under section 2511(a), is simply not "clear and convincing." *In re D.A.T.*, *supra*. Thus, we must reverse.

Order reversed.[13]

_____

[12] Mother completed urine/drug screens multiple times in March 2016, April 2016, August 2016, and July 2017.

[13] Having determined that there is insufficient evidence to support the court's order terminating Mother's parental rights under section 2511(a), we need not address whether there was sufficient evidence for termination under section 2511(b), where it is a bifurcated process. *See In re L.M.*, 923 A.2d 505, 511 Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)[.]").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/19/18</u>